COMMONWEALTH of Kentucky, DEPARTMENT OF FINANCE, ex rel. DEPARTMENT OF FISH AND WILDLIFE RESOURCES, Appellant,

v.

Ray BROWNING et al., Appellees.

Court of Appeals of Kentucky.

June 15, 1973.

As Modified on Denial of Rehearing

Sept. 28, 1973.

G. E. Reams, Harlan, for appellant.

James S. Greene, Jr., Greene & Forester, Harlan, for appellees.

CULLEN, Commissioner.

This appeal involves the same project (acquisition of flowage easements for Cranks Creek Lake) that was involved in Commonwealth, Department of Finance, ex rel Department of Fish & Wildlife Resources v. Day, Ky., 499 S.W.2d 587 (this day decided). Reference is made to the opinion in that case for a description of the project.

In the instant case the condemning department is appealing from a judgment awarding $40,450 to the Browning family as damages in the condemnation of a flowage easement covering 28.65 acres of the Brownings' 150-acre tract of land.

A number of the issues raised on this appeal are the same as ones raised in the Day case and our answers there are controlling here. Specifically, those issues are the ones relating to refusal to permit appraisal witness Crabtree to testify as an expert (using hearsay) as to frequency of flooding, the use of jurors who had sat in other cases involving the same project, and alleged error in the instructions.

A major issue that was involved in the *Day* case, i. e., the *extent* of the easement (as covering camping rights, etc.), is not in this case because the condemnor, after the case reached the circuit court on appeal from the county court, amended the petition to delete any reference to camping rights, etc. It was made perfectly clear throughout the trial that camping rights were not being condemned.

We shall discuss those issues raised here that are not answered by the opinion in the *Day* case.

First, the appellant condemnor complains of the refusal of the trial court to admit evidence by an officer of the Department of Fish & Wildlife Resources concerning the procedures that would be followed with respect to obtaining additional flowage rights if in the future any changes were made in the dam structure.

An avowal was made as to what the testimony would have been. In substance, the testimony was that if changes in the dam would result in overflowing bordering lands *above* the *1400-foot contour line,* additional flowage easements would have to be acquired. That evidence was of no relevance, because the easement sought was one extending only to the 1440-foot contour line. What would have been relevant was testimony as to the probability of an increase in the *frequency or duration* of flooding up to the 1440-foot line by changes in the dam. See United States v. 2,648.31 Acres of Land, 4 Cir., 218 F.2d 518. But the evidence was not addressed to that point.

■ The appellant's counsel sought in his closing argument to comment with reference to the importance of the excluded evidence just above referred to, and the excluded evidence sought to be elicited from Crabtree as to the estimated frequency of flooding. Error is claimed in the trial court's refusal to permit the comments. The court's ruling obviously was correct, because excluded evidence is not a proper subject of comment in a closing argument.

■ The appellant next asserts error in the overruling of a motion to set aside the swearing of the jury because of alleged misconduct of a juror in conversing with one of the witnesses for the landowners during a recess of court. When the incident was called to the court's attention, the court offered to call in the juror and the witness for questioning, but counsel for appellant stated that he did not want that done. The procedure suggested by the court was proper, and having rejected that procedure the appellant is in no position to claim error. See Commonwealth, Dept. of Highways v. Pate, Ky., 457 S.W.2d 635.

■ Another contention is that the trial court erroneously refused to admit rebuttal evidence as to anticipated frequency and duration of flooding. We believe that any error that may have occurred in this regard was not prejudicial, for the reasons hereinafter mentioned in our discussion of the question of excessiveness of the damage award.

The witnesses for the condemnor testified that the highest and best use of the land, before the taking, was for farming, and that in their opinion the land would continue to have substantial usability and value for that purpose because the flooding would be only infrequent (as evidenced by the fact that the land had flooded only one time after the dam first was built in 1964). Those witnesses fixed the "before" value at a maximum of $31,685 and the "after" value at not less than $16,035, indicating damages of around $15,000.

The landowners' witnesses, on the other hand, gave their opinions that before the taking the highest and best use of the 28.-65-acre parcel to be covered by the easement was for subdivision development; that the remainder of the 150-acre farm was rough mountain land of little value; and that since the terms of the easement prohibited the erection of any structures on the land covered by the easement, its usefulness for subdivision purposes was destroyed. Those witnesses fixed the "before" value at from $39,600 to $46,550, and the "after" value at from $5,200 to $11,000. The jury fixed the "before" value at $46,550 and the "after" value at $6,100.

■ Although the evidence that the highest and best use of the parcel subject to the easement was for subdivision development is not very convincing to us, we are of the opinion it had sufficient probative value to sustain a finding of that fact. This being so, the jury was warranted in finding a high "before" value, and a substantially lower "after" value attributable to a complete destruction of any subdivision use. We cannot say that because the

parcel covered by the easement reasonably would have usefulness and value for farming purposes, subject only to intermittent and infrequent flooding, the "after" value fixed by the jury was patently too low. The overall "after" value represents an average of $40 per acre for some 28 acres of bottom land subject to the flowage easement, and some 122 acres of rough mountain land. A value that low is not inconceivable under the evidence.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.